DOWNER *vs.* REMER, impleaded, &c.

Notice of protest sent by mail directed to the *town* where the party resides is sufficient, although there be several post offices in the same town, unless it appear that the holder knew that it should be directed in a different manner; or now *by statute*, unless the party when affixing his signature to a bill or note specifies thereon the post office to which notice must be addressed.

Where the sum specified in a notice of protest *varies* from the true sum, it is for a jury to say, whether the party has or has not been misled.

THIS was an action of assumpsit tried at the Wayne circuit before the Hon. DANIEL MOSELEY, one of the circuit judges.

The defendant was sued as the endorser of a promissory note made by one James Young, for the sum of $560, dated 20th April, 1835, payable at the Chemung Canal Bank at *Elmira*, eighteen months after date, with interest after six months from date. On 22d October, 1836, when the note came to maturity, payment was demanded at the Chemung Canal Bank, by the teller thereof, and notice of demand and non-payment was deposited in the post office at Elmira,

Downer v. Remer.

directed to the defendant *Remer*, at *Benton*, *Yates county*, the place of his residence. The words *Benton*, *Yates county*, were placed under the defendant's name upon the note after the endorsement, but not by the defendant. The notice sent by the teller was produced in court, and three witnesses, on looking at it, testified that it stated the amount of the note which had been protested to be *nine* hundred and ninety-nine dollars fifty-two cents. The teller testified that he read the same *five* hundred and ninety-nine dollars fifty-two cents, being the *principal* and *interest* of the note, and that it was so intended, but said it might be read *nine* hundred, &c.; he, however, testified that at the time the note fell due, there was no other note in the Chemung Canal Bank with the defendant's name upon it. The defendant proved that when the notice was sent there were *three post offices* in the town of Benton; one called *Benton*, distant six miles from the residence of the defendant; another, *West Dresden*, distant three and a half miles from the defendant's residence; and the third, *Benton centre*, within two miles of the defendant's residence. He also proved that he was in the habit of receiving his letters and papers at the *Penn Yan* post office, which was within two and a half miles of his residence. The notice sent by the teller was received at the *Benton post office*, and remained there until December, when it was sent by the post master to the defendant.

The counsel for the defendant requested the judge to charge the jury that due notice of demand and non-payment had not been given; that the notice should have been sent to the post office *nearest* to the residence of the defendant, *or* where he usually resorted to obtain his letters and papers; and secondly, if sent to the proper office, that it was insufficient, being calculated to mislead. The judge refused so to charge, and submitted the question to the jury whether the notice of protest was sufficient to apprise the defendant of the dishonor of the note; and as to the *place* to which the notice was sent, he observed that upon the plaintiff's showing, the notice was sufficient, it having been directed to Benton, Yates county, where the defendant resided, and he

referred it to the jury to decide whether under all the proof on that subject the notice had been directed to the proper place. The jury found for the plaintiff, and the defendant now asks for a new trial, for the misdirection of the jury.

*J. A. Spencer,* for the defendant.

*H. Welles,* for the plaintiff.

*By the Court,* BRONSON, J. The statute declaring a notice of non-payment sufficient, directed to a city or town where the person sought to be charged by such notice resided at the time of drawing, making or endorsing a bill of exchange or promissory note, Statutes, sess. of 1835, p. 152, being passed after the making of this note, cannot aid the plaintiff on the question whether the notice of non-payment was properly directed.

Notice of the dishonor of a bill or note should be so given that it will be likely to reach the drawer or endorser without delay. Where the parties reside in different towns, the notice may be sent by mail ; and then it should be directed to a post office in the town where the drawer or endorser resides, or to some other post office where he usually receives his letters. If there be more than one post office in the town where the drawer or endorser resides, the notice should be directed to that nearest his residence, unless he usually resorts to another. *Cuyler* v. *Nellis,* 4 Wendell, 398, and the cases there cited.

In this case, the notice would have been good had it been directed to *Penn Yan,* where the defendant usually received his letters, or to *Benton Centre,* the office nearest to him in the town where he lived. But it was directed to *Benton,* an office to which the defendant did not resort, and which was the most distant from him of any of the three offices in the town. Still the notice would have been sufficient, if, after diligent inquiry, it had been directed according to the best information that could be obtained. *Chapman* v. *Lipscombe,* 1 Johns. R. 294. *Bank of Utica* v. *Davidson,* 5 Wendell, 587. *Catskill Bank* v. *Stall,* 15 id. 364. But

there was no proof that any diligence whatever had been used. The words "Benton, Yates county," were written under the defendant's name after he had endorsed the note; but when, or by whom it was done, did not appear; and there was no evidence that the person who left the note for collection, or the bank officers, made any inquiry for the purpose of ascertaining the proper direction to be given to the notice, or that they acted on any information that had been previously acquired. For aught that appears, the person who directed the notice may have known that there were three post offices in the town of *Benton,* and that the notice was sent to the office most remote from the residence of the endorser. He may also have known that the endorser usually received his letters at the *Penn Yan* office.

Where there are several post offices in the same town, I think the holder should not be held to very strict proof in excusing a misdirection of the notice; but I am unable, especially since the case of *Cuyler* v. *Nellis,* 4 Wendell, 398, to say that no diligence whatever should be required. But my brethren are of a different opinion. They say that the case of *Cuyler* v. *Nellis* has not been followed—that it is enough to send notice to the town where the drawer or endorser lives, unless it appear that the holder knew that the notice should have been directed in a different manner. The objection that the notice was misdirected is consequently overruled.

The note with the interest added was misdescribed by mistake in the notice of protest, as amounting to $999,52, instead of $599,52; but in all other respects it was accurately described, and it was the only note in the bank with the defendant's name upon it. The jury were well warranted in finding that the defendant was not misled by the error, and if not misled the notice was sufficient. *Bank of Rochester* v. *Gould,* 9 Wendell, 279. *Smith* v. *Whiting,* 12 Mass. R. 6. Chitty, jun. on Bills, 71.

New trial denied.