## Richard L. Munroe *vs.* Nathaniel Leach.

*In an action by the owner of a coach and horses against the driver of another coach, for driving the wheels of his coach upon one of the horses attached to the plaintiff's coach, it is a question for the jury, whether the plaintiff's driver was guilty of such misconduct as to prevent the plaintiff's recovery; and the court cannot properly give peremptory instructions to the jury that the defendant is entitled to a verdict because of the misconduct of the plaintiff's driver.*

*Evidence that the drivers of two coaches on the same route mutually attempted, several times, to intercept each other's progress by "cutting each other off," is not sufficient to prove that, in a subsequent collision on the same trip, they were both in fault.*

Trespass for an injury done to the plaintiff's horse. Trial in the court of common pleas. The following is the report of the case, as made by the judge who presided at the trial:

It appeared in evidence that there were two rival lines of coaches running from Roxbury to Boston; that the plaintiff was owner of one of the lines, which was driven by one Littlefield; that the defendant was the driver of the other line; and that the injury, set forth in the plaintiff's writ, was done on the 12th of February 1841, while the two lines of coaches were passing from Roxbury to Boston.

A witness called by the plaintiff testified as follows: " I rode with the defendant when the matter took place. The plaintiff had a coach running there at the same time. The defendant was driving one coach, and Littlefield was driving the plaintiff's coach. They were running and cutting each other off, to prevent each other from going ahead. They had been in the habit, before that, when going into Boston, of cutting each other off. They got along about a mile from Roxbury, towards Boston, and Leach, the defendant, cut across over to Littlefield. Leach was ahead, and Littlefield tried to get ahead of him. Leach drove Littlefield into a snow drift, and Littlefield's horses were up to their bellies in the snow, jumping and hopping in the snow; and then Leach hauled over the other side, and Littlefield got out of the snow. When Littlefield's horses came out of the snow, one of them was lame. I did not see the wheels of Leach's coach strike Littlefield's horses. There was

not room for Littlefield to get along when Leach drove up. Immediately afterwards, I saw the horse was lame. Littlefield, during the passage, had before driven on to Leach, as near as he could, with intent to head him. The last time that Littlefield attempted to go by Leach, Leach was about the middle of the road. When Leach bore away on Littlefield, Littlefield tried to avoid him all he could; and the injury was done as before stated. There was a good deal of snow there, on the side of the road. Leach had wheels, and Littlefield had runners."

The counsel for the defendant contended that, according to this evidence, the action could not be maintained, as Littlefield was himself in fault; as he and Leach were mutually running and cutting each other off, to prevent each other going ahead. The court sustained this objection, and instructed the jury, that as the plaintiff's driver, Littlefield, was himself in fault, in the manner stated by the defendant's counsel, the action could not be sustained, and directed them to give a verdict for the defendant; which they did. To these instructions of the court, the plaintiff alleged exceptions.

*Harrington,* for the plaintiff.

*F. Hilliard,* for the defendant.

Wilde, J. The defence assumed at the trial was, that the driver of the plaintiff's coach and the defendant were both in fault, whereby the plaintiff's horse was injured as alleged in the declaration. This defence was sustained by the presiding judge at the trial, who instructed the jury that as the plaintiff's driver was himself in fault, in the manner stated by the defendant's counsel, the action could not be sustained, and directed them to give a verdict for the defendant. This direction assumed a fact as proved, which should have been left to the jury on the evidence; and for this consideration, we are of opinion that the plaintiff is entitled to a new trial.

It was argued by the defendant's counsel, that the fact of the negligence of the plaintiff's driver was clearly proved by a witness called by him; and as justice has been done, the court, in their discretion, ought not to interpose and disturb the verdict,

notwithstanding the misdirection. And we are inclined to the opinion, that if the fact were clearly proved by the uncontradicted testimony of the plaintiff's witness, and would be a good defence, the objection to the motion for a new trial would be well founded. A like motion, in the case of *Nichols* v. *Goldsmith*, 7 Wend. 160, was denied on this ground.

But we are of opinion that the fault of the plaintiff's driver is not satisfactorily proved. All that is proved is, that he had been in fault previously to the transaction complained of. But this was no justification for the defendant in the commission of the like fault. And it appears, by the evidence reported, that the injury complained of was solely caused by the misconduct of the defendant. He drove the plaintiff's horses into a snow drift; and it was testified by the witness, that Littlefield, the plaintiff's driver, tried to avoid him all he could. It is not therefore necessary to consider the question whether it would be a good defence to prove that the plaintiff's driver was in fault in the transaction complained of, as well as the defendant; as we think the evidence would not warrant a jury in finding that fact.

*New trial granted.*